IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Broadstripe, LLC, *et al.*, | ) | Case No. 09-10006 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Hearing Date: October 7, 2009 at 2:30 p.m. |
| | ) | Objection Deadline: September 30, 2009 at 4:00 p.m. |

**DEBTORS' MOTION FOR ORDER AUTHORIZING (I) ASSUMPTION
AND ASSIGNMENT OF A NONRESIDENTIAL REAL PROPERTY LEASE, AND (II)
SALE OF CERTAIN DE MINIMIS ASSETS RELATED THERETO**

Broadstripe, LLC ("Broadstripe") and certain of its direct and indirect affiliates, the debtors and debtors in possession in the above-captioned cases (the "Debtors"), by and through their undersigned counsel, respectfully file this motion (the "Motion") pursuant to §§ 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"). In support of this Motion, the Debtors respectfully represent as follows:

## II.
## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (N). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested in this Motion are §§ 363(b) and 365(a) of the Bankruptcy Rules.

## III.
## BACKGROUND

A.     **General Case Background**

2.     On January 2, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108.[1] No trustee or examiner has been appointed in the Debtors' cases.

4. Based in St. Louis, the Debtors own and operate cable television and related telecommunications properties in three regions: Maryland (the "Mid-Atlantic System"), Michigan (the "Central System"), and in Washington and Oregon (the "Pac-West System"). As of the Petition Date, the Debtors provided approximately 93,000 customers analog and digital cable video services, high-speed data internet access services ("HSD"), and telephone services through their broadband network of coaxial and fiber optic cable.

5. Additional background information on the Debtors, their businesses and the events giving rise to these bankruptcy proceedings can be found in the *Affidavit of Gustavo Prilick in Support of First-Day Motions* (the "Prilick Affidavit").

**B.    Lease Background**

6. Pursuant to that certain lease agreement (the "Notch Butte Lease") by and between the Debtors and the United States Department of the Interior, Bureau of Land Management (the "Bureau of Land Management"), the Debtors lease public land in Lincoln County, Idaho, commonly known as Notch Butte ("Notch Butte") from the Bureau of Land Management in connection with their communication business. A true and correct copy of the Notch Butte Lease is attached hereto as Exhibit A.

7. The Debtors make rent payments to the Bureau of Land Management on an annual basis. Although the Debtors are current on their annual rent payments, the rent payment

---

[1] Unless otherwise noted, section references herein are to the Bankruptcy Code.

for this year was not timely made so the Debtors incurred certain penalties and late fees as a result thereof.

8.     The Debtors placed certain *de minimis* assets, *viz.*, a communication tower, a small outbuilding, and related equipment (collectively, the "Notch Butte Equipment") on the leasehold to enhance their communication infrastructure.

9.     No longer having need of the Notch Butte site, the Debtors recently moved to reject the Notch Butte Lease in the *Debtors' Fifth Omnibus Motion for Order Authorzing Rejection of Certain Executory Contracts* [Docket No. 765] (the "Rejection Motion").

10.    Upon receiving service of the Rejection Motion, the Bureau of Land Management contacted counsel for the Debtors and informed counsel that a subsidiary of Verizon Corporation ("Verizon") was interested in receiving an assignment of the Notch Butte Lease. The Bureau of Land Management also expressed concern that, failing an assignment, the Debtors rejection of the Notch Butte Lease would cost taxpayers tens of thousands of dollars in remediation costs because the Bureau of Land Management would have to remove the Notch Butte Equipment prior to reletting the Notch Butte site to Verizon. To induce the Debtors to assume the Notch Butte Lease and assign it to Verizon, the Bureau of Land Management agreed to waive any and all penalties and late fees owing under the lease upon assignment of the lease to Verizon.

11.    Arm's length negotiations between the Debtors, Verizon, and the Bureau of Land Management ensued and the parties, in good faith, have reached an agreement in principle regarding disposition of the Notch Butte Lease.

12.    The Debtors have agreed to withdraw that portion of the Rejection Motion which seeks to reject the Notch Butte Lease and, instead, request authority from the Court to assume the

Notch Butte Lease with the Bureau of Land Management and assign it, and sell the Notch Butte Equipment, to Verizon in return for payment of $5,000.00 from Verizon. The Bureau of Land Management has agreed to waive any all claims it may have against the Debtors for penalties and late fees owing under the Notch Butte Lease.

## IV.
## RELIEF REQUESTED

13. By this Motion, the Debtors seek authorization pursuant to §§ 363 and 365 to sell the Notch Butte Equipment, and assume and assign the Notch Butte Lease, to Verizon.

14. The Debtors also request that any order granting this Motion be of immediate force and effect, notwithstanding any stay imposed by Rule 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## V.
## BASIS FOR RELIEF REQUESTED

**A.    Assumption and Assignment of Notch Butte Lease**

15. Section 365(a) provides that, subject to court approval, a debtor in possession may assume or reject any of its executory contracts or unexpired leases. 11 U.S.C. § 365(a). This section is intended to provide a means whereby a debtor can force specific performance of the counterparty to an executory contract or unexpired lease if the debtor cures all defaults in its past performance and provides adequate assurance of future performance. *Lifemark Hospitals, Inc. v. Liljeberg Enterprises, Inc. (In re Liljeberg Enters., Inc.)*, 304 F.3d 410, 438 (5th Cir. 2002). "The act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 505 (5th Cir. 2000).

4

16. The traditional standard applied to determine whether the assumption of an executory contract or unexpired lease should be authorized is the "business judgment" standard, and courts traditionally grant significant deference to the exercise of reasonable business judgment by a debtor in possession. *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *NLRB v. Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional"); *In re III Enterprises, Inc.*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations omitted) ("Generally, a court will give great deference to a debtor's decision to assume or reject the contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment—a standard which we have concluded many times is not difficult to meet.").

17. The business judgment standard mandates that, unless the decision is the product of bad faith, whim, or caprice, a court must approve a debtor in possession's decision to assume an executory contract or unexpired lease. *See, e.g., Bildisco*, 465 U.S. at 523; *In re Prime Motor Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991) (opining that a court must follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice).

18. Section 365(b)(1) provides that, if a default in an executory contract or unexpired lease exists, the debtor in possession may not assume that contract or lease unless, at the time of assumption, the trustee (a) cures, or provides adequate assurance that the trustee will promptly cure, the default; (b) compensates, or provides adequate assurance that the trustee will promptly compensate for any actual pecuniary loss to that party resulting from the default; and (c) provides adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1).

HOUSTON 1046871v.2
00331310;v1

19. Here, the Debtors are current on their annual rent obligations under the Notch Butte Lease and the Bureau of Land Management has waived any claim it may have against the Debtors for penalties and late fees arising from any untimely rent payment; therefore, no monetary payment or other cure is required as a condition for assumption. The documentation evidencing the assumption and assignment of the lease and the sale of the equipment will state that the Notch Butte Equipment is being transferred as is, where is, and without warranty of any kind and that the cure payment required for the Debtors' assumption of the lease is $0.

20. Regarding adequate assurance of future performance, the Debtors intend to provide evidence at the hearing of Verizon's willingness and ability to perform under the assigned lease. Accordingly, the Debtors submit that the assumption and assignment of the Notch Butte Lease satisfies the business judgment test and should be approved.

**B.     Sale of Notch Butte Equipment**

21. Section 363(b) of the Bankruptcy Code provides that a debtor in possession, "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate..." 11 U.S.C. § 363(b)(1). Courts generally allow disposition of property of the estate outside of the ordinary course of business so long as such disposition is within the debtor's sound business judgment. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (stating that under ordinary circumstances, court normally defers to trustee's judgment so long as there is a legitimate business justification for disposition of assets); *In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting articulated business justification test of *Lionel Corp.* and requiring showing of good

faith); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that Third Circuit adopted "sound business purpose" after *Abbott Dairies* decision).

22. Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *See In re Lionel Corp.*, 722 F.2d at 1071 (setting forth the "sound business" purpose test); *In re Abbott Dairies*, 788 at 147-49 (implicitly adopting the articulated business justification test of *Lionel* standard and adding the "good faith" requirement); *In re Del. & Hudson Ry. Co.*, 124 B.R. at 176 (adopting *Lionel* factors in determining whether sound business purpose exists for sale outside the ordinary course of business in this District).

23. The contemplated sale of of the Notch Butte Equipment to Verizon is based on sound business judgment. The Debtors no longer have need of the communication tower and other equipment that is currently located at Notch Butte. Furthermore, had the Debtors gone forward with the Rejection Motion as to the Notch Butte Lease, the Debtors would have received no consideration for the Notch Butte Equipment and the Bureau of Land Management and, by extension, taxpayers would have been saddled with the obligation to clear the site before reletting it to a new lessee. By selling the Notch Butte Equipment to Verizon, the Debtors will receive valuable consideration for their equipment and the Bureau of Land Management will be under no obligation to pay any remediation costs in connection with the Debtors' assignment of the Notch Butte Lease to Verizon. Furthermore, by agreeing to assign the lease to Verizon the Debtors will be able to avoid any claim by the Bureau of Land Management against their estates for penalties or other late fees the Debtors may have incurred under the Notch Butte Lease. Thus,

a sound business justification exists for the sale of the equipment to Verizon and fair and reasonable consideration for the equipment will be provided the Debtors.

24. Additionally, as noted previously, the Debtors, the Bureau of Land Management, and Verizon negotiated the terms of the requested assumption, assignment, and sale at arm's length and in good faith.

25. Finally, the Debtors have provided notice of the relief requested herein to the official committee of unsecured creditors, the office of the United States trustee, and other creditors of the Debtors and parties in interest in these chapter 11 cases in accordance with the Bankruptcy Rules. Accordingly, the business judgment test has been satisfied and the relief requested herein should be granted.

26. When a sound business justification exists for the sale transaction, as it does in this case, the Court may authorize the sale of assets free and clear of existing liens, claims, encumbrances, and interests if any entity that holds a lien, claim, encumbrance or interest consents to the proposed sale. 11 U.S.C. § 363(f)(2).

27. The notice provided to creditors and other parties in interest of the relief requested herein provides ample opportunity for parties holding liens, claims, encumbrances or interests in the Notch Butte Equipment to object. If no party objects (or any objection is resolved), § 363(f)(2) is satisfied and the sale may be free and clear of all such interests. To the extent that the Notch Butte Equipment is subject to a valid interest, lien, or security interest, any such interest will attach to the sale proceeds.

## C.     Rule 6006 Stay Relief

28.     Rule 6006(d) of the Bankruptcy Rules provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.

29.     The Debtors submit that, based on the representations made herein, cause exists for any order granting this motion to be of immediate force and effect. Therefore, the Debtors request that the stay imposed by Rule 6006(d) be waived or disolved by order of the Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit B</u> granting the relief requested herein and awarding such other and further relief that the Court deems just and proper.

HOUSTON 1046871v.2
00331310;v1

Dated: September 11, 2009
       Wilmington, Delaware

                              ASHBY & GEDDES, P.A.

                         /s/ Amanda Winfree

Don A. Beskrone (#4380)
Ricardo Palacio (#3765)
Amanda M. Winfree (#4615)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

- and -

GARDERE WYNNE SEWELL, LLP
John P. Melko (TX 13919600)
1000 Louisiana, Suite 3400
Houston, TX 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555

Michael P. Cooley (TX 24034388)
1601 Elm Street, Suite 3000
Dallas, TX 75201-4761
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

COUNSEL FOR THE DEBTORS

HOUSTON 1046871v.2
00331310;v1