# EXHIBIT 1

**[Bidding Procedures]**

## BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") shall govern the auction (the "Auction") and proposed sale and assignment (the "Sale") of the Debtors' cable television and related telecommunications properties in the Maryland region (the "Mid-Atlantic System"), the Michigan region (the "Central System"), and in the Washington and Oregon region (the "Northwest System," and together with the Mid-Atlantic System and the Central System, the "Systems") as well as the assumption and assignment of certain executory contracts and unexpired leases related thereto. On_____, 2011, the Bankruptcy Court entered an order, among other things, approving these Bidding Procedures (the "Bidding Procedures Order").[1] The Bidding Procedures Order approves the following procedures for the qualification of bidders, directs the form and manner of notice of these Bidding Procedures, and schedules the Auction to determine the Prevailing Bid (as defined below). The Auction will only take place if a bid is received from a Qualified Bidder (as defined below) in an amount equal to or greater than $98.4 million (the "Overbid").

### The Bidding Process – Overview

The Debtors shall:

- Obtain, if they have not already done so, an executed confidentiality agreement from any prospective bidder desiring to become a Qualified Bidder in form and substance acceptable to the Debtors (a form of which is available from Debtors' counsel) and on terms and conditions substantially similar to those set forth in the confidentiality agreements executed by the proposed purchasers (the "Stalking Horse Bidders") under the Stalking Horse Agreements (as defined below) in connection with the Sale;

- Assist each Qualified Bidder in conducting its due diligence investigations through October 18, 2011;

- Identify each Qualified Bidder by October 19, 2011;

- Conduct the Auction, and select the Prevailing Bidder (as defined below) on October 20, 2011; and

- Seek approval of the Sale to the Prevailing Bidder at a hearing before the Bankruptcy Court to be held on _____, 2011, at _:__ _.m. (the "Confirmation Hearing").

Within five (5) business days after entry of the Bidding Procedures Order, the Debtors will serve a notice of the Auction, Sale, and Confirmation Hearing (the "Auction and Confirmation Hearing Notice") by first class mail, postage prepaid, to: (a) all potential purchasers

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion") or the Stalking Horse Agreements, as applicable.
{00547458;v1}

HOUSTON 1093432v.18

previously identified or solicited by the Debtors and any additional parties who have at any time previously expressed an interest in potentially acquiring the Systems; (b) all other potentially interested parties identified by the Debtors or their advisors; (c) the Office of the United States Trustee; (d) all parties of interest who have requested notice pursuant to Bankruptcy Rule 2002; (e) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any or all of the Systems; (f) all counterparties to executory contracts; (g) all applicable federal, state and local regulatory, franchising or taxing authorities or recording offices which have a reasonably known interest in the relief requested in the Motion; and (h) all other parties on the Debtors' most current master service list filed in the Debtors' bankruptcy cases.

In addition, within five (5) business days after entry of the Bidding Procedures Order, the Debtors shall publish the Auction and Confirmation Hearing Notice, once each in the national edition of the Wall Street Journal and a prominent cable industry publication.

## Qualified Bidders

Any person seeking to become a Qualified Bidder pursuant to these Bidding Procedures and participate in the Auction must deliver to the Debtors, c/o EL MOLINO ADVISORS, INC., 520 South Grand Avenue, Suite 665, Los Angeles, CA 90071, Attention: Reece Fulgham, and to Debtors' investment banker and broker, DH Capital, LLC, Attention: Joseph P. Duggan, 1540 Broadway, Suite 1610, NY, NY 10036, with a copy to Debtors' counsel, Gardere Wynne Sewell LLP, 1000 Louisiana, Suite 3400, Houston, Texas, 77002-5011, Attention: John P. Melko, so as to be received no later than 5:00 p.m. (Pacific Time) on October 19, 2011, the following items:

- Financial and other information of the prospective bidder, including proof of unrestricted cash balances or non-contingent financing, that allows the Debtors to make a reasonable determination as to such person's financial and other capabilities to consummate a purchase within the time frame set forth for closing in the purchase agreements attached to the Bid Procedures Motion (the "Stalking Horse Agreements");

- Proof of corporate or other authority to participate at the Auction and, if successful, subsequently close the transaction;

- Designation of one or more representatives authorized to act on behalf of such person;

- Other written evidence, in form and substance satisfactory to the Debtors in their sole discretion, as may be requested by the Debtors or their advisors, from time to time;

- A copy of a completed escrow agreement (the "Escrow Agreement"), the form of which is attached hereto as Exhibit A, and evidence that an Escrow Deposit (as defined in the Escrow Agreement) of $13 million has been deposited in the Debtors' escrow account with JPMorgan Chase; and

{00547458;v1}　　　　　　　　　　　　2

HOUSTON 1093432v.18

- Proposed purchase agreement(s) for the Systems, marked to show proposed changes to the Stalking Horse Agreements.

- Any proposed purchase agreement other than the Stalking Horse Agreements must be irrevocable through the Auction; <u>provided</u> that if such proposed purchase agreement is accepted as the Prevailing Bid or Back-Up Bid (as defined herein), such proposed purchase agreement shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

A person who complies with all of the foregoing requirements may be identified by the Debtors as a "<u>Qualified Bidder</u>." The Debtors, in consultation with the DIP Lenders and Required First Lien Lenders, shall make their final determination as to which prospective bidders have qualified to become a Qualified Bidder by October 19, 2011. The Debtors reserve the right (i) at any time to require any potential bidder previously determined to be a Qualified Bidder (other than the Stalking Horse Bidders) to provide additional evidence of its ability to consummate an alternative transaction in order to remain a Qualified Bidder, and (ii) to exclude any prospective bidder from participating further in the Auction process as a result of its inability to satisfy such further requirements to become a Qualified Bidder. The Debtors shall provide notice to the Stalking Horse Bidders within two (2) business days of qualifying any prospective bidder as a Qualified Bidder in the event a prospective bidder is qualified prior to the October 19, 2011 deadline for final determination of Qualified Bidders; otherwise, the Debtors shall provide such notice to the Stalking Horse Bidders on October 19, 2011. The Debtors will also provide notice to the Official Creditors Committee (the "Committee") of qualifying any prospective bidder as a Qualified Bidder at the same time it provides such notice to the Stalking Horse Bidders.

Interested bidders requesting information about the qualification process should contact John P. Melko, Gardere Wynne Sewell LLP, 1000 Louisiana, Suite 3400, Houston, Texas 77002, jmelko@gardere.com; (Telephone: 713-276-5727).

All Qualified Bidders, other than the Stalking Horse Bidders, that submit a Qualified Bid shall: (a) not be allowed any expense reimbursement, breakup, termination or similar fee or payment; (b) not be entitled to any expense reimbursement, breakup, termination or similar fee or payment on account of their tendering a Bid or the determination that their Bid is a Qualified Bid; and (c) be deemed to have waived any right to seek a claim for substantial contribution under section 503(b)(3)(D) of the Bankruptcy Code.

## Due Diligence

Qualified Bidders desiring to conduct due diligence who have not already made arrangements to do so are directed to contact Larry Perkins of EL MOLINO ADVISORS, INC., 520 South Grand Avenue, Suite 665, Los Angeles, CA 90071, lperkins@elmolinoinc.com; (Telephone: 213-291-2547). The Debtors and their representatives shall not be obligated to furnish any information of any kind whatsoever relating to the their business to any person who the Debtors have not identified as a Qualified Bidder. Any due diligence information provided to any Qualified Bidder also shall be simultaneously provided to the Stalking Horse Bidders to the extent not previously provided.

Any person conducting due diligence must complete their due diligence investigation by October 18, 2011.

## Bidding Procedures

The Auction will take place at the offices of Gardere Wynne Sewell LLP, 1000 Louisiana, Suite 3400, Houston, Texas 77002, on October 20, 2011, commencing at 10:00 a.m. (prevailing Central Time), or such other time or place as the Debtors, with the consent of the DIP Lenders, Required First Lien Lenders and the Stalking Horse Bidders, shall notify the Qualified Bidders. At least two (2) business days prior to the Auction, each Qualified Bidder must inform the Debtors whether it intends to participate in the Auction. In addition to the foregoing, the Auction shall be conducted as follows:

- Only parties which have been established as Qualified Bidders **and** posted the requisite Escrow Deposit(s) will be permitted to bid;

- The Committee, parties in interest and creditors of the Debtors bankruptcy estates and their advisors shall be permitted to attend the Auction as observers either in person or by telephone;

- All attendees at the Auctions shall be required to sign in and to list their employer or the party they represent;

- The Auction proceedings shall be recorded by a certified court reporter;

- A representative of the Debtors shall conduct the Auction (the "Auctioneer");

- Each Auction will proceed in rounds circulating clockwise from the Auctioneer around the room or table;

- The first opening bid must be in an amount greater than the Overbid by at least $250,000;

- All bids shall be expressed in U.S. Dollars, and shall state the amount and form of the consideration to be paid, and, the extent of liabilities to be assumed, if any;

- Minimum bidding increments for the Systems shall be $250,000.

- The Stalking Horse Bidders will be entitled to a bidding credit equal to the Break Up Fee of $1,900,000 in the aggregate, allocated among the Stalking Horse Bidders in proportion to the proposed purchase price for the respective System;

- With the consent of the Debtors, the DIP Lenders and the Required First Lien Lenders, Qualified Bidders shall be permitted to caucus privately among themselves (but <u>not</u> with other Qualified Bidders) at any time, with or without the participation of the Debtors and their advisors at the Qualified Bidder's request; <u>provided, however,</u> the Debtors reserve the right to impose uniform reasonable time restrictions on such caucuses so that the Auction may continue and be completed in an orderly and timely manner;

- With respect to a Qualified Bidder's consultation with other parties, all parties are encouraged to become familiar with the absolute prohibition under the Bankruptcy Code against collusive bidding and penalties associated therewith, including civil and, potentially criminal, fines, penalties, sanctions and damages;

- The Debtors may adopt such other rules for the Auction (including rules that may depart from those set forth herein) that they anticipate will result in the highest or otherwise best value for their estates and that are not inconsistent with any Bankruptcy Court order, <u>provided</u> that any changed or additional rules for the Auction are not materially inconsistent with these Bidding Procedures and are communicated to all participants at or prior to the Auction;

- The Qualified Bidder submitting the Prevailing Bid shall be declared the Prevailing Bidder; and

- The Qualified Bidder submitting the second highest Prevailing Bid shall be declared the Back-up Bidder (as defined below).

### Selection of the Prevailing Bid and Prevailing Bidder

During and upon the conclusion of the Auction, the Debtors will consider each bid made at the Auction. Specifically, the Debtors will:

(a)   Review each bid or the final bids made at the Auction on the basis of, among other things, the following:

- The amount of consideration to be paid;

- The form of consideration to be paid;

- The extent of the liabilities to be assumed, if any;

- The extent of the executory contracts and unexpired leases to be assumed and corresponding liabilities to be assumed, if any;

- The extent of the Debtors' anticipated cure obligations, if any;

- The ability of the Qualified Bidder to close the transaction on or before the closing date set forth in the Stalking Horse Agreements or Prevailing Bid;

- Any other or additional contractual terms made a part of a bid; and

- The ease, speed and certainty of consummating the transaction with a particular Qualified Bidder.

(b) Identify, in consultation with the DIP Lenders and Required First Lien Lenders, the highest or otherwise best bid (the "Prevailing Bid"), the bidder who submitted such bid (the "Prevailing Bidder"), the next highest or otherwise best bid (the "Back-Up Bid") and the bidder who submitted such Back-Up Bid (the "Back-Up Bidder").

### Court Approval of Sale

The Debtors' plan of reorganization ("Plan") shall include the transfer of the Systems to the Prevailing Bidder. The Confirmation Hearing for the Plan will be held in the United States Bankruptcy Court for the District of Delaware before the Honorable Christopher Sontchi on _____ \_\_, 2011, at \_:\_\_ \_.m. (Eastern Time) or as soon thereafter as the Court may schedule. The Confirmation Hearing may be adjourned or cancelled without further notice by an announcement at the Confirmation Hearing.

At the Confirmation Hearing, the Debtors will present evidence and seek (i) Bankruptcy Court approval that the Prevailing Bidders are Qualified Bidders and that their highest bids are the Prevailing Bids, (ii) approval of the Prevailing Bids and the Prevailing Bidders, (iii) authority to enter into a definitive agreement with respect to the Prevailing Bids and consummate the transactions contemplated by the Prevailing Bids, and (iv) entry of an order confirming the Debtors' Plan (the "Confirmation Order"). The proposed Prevailing Bidders shall appear at the Confirmation Hearing and be prepared to testify in support of their Prevailing Bids and their ability to close in a timely manner and provide adequate assurance of their future performance under any and all executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Prevailing Bidders at closing, if any. The Debtors shall accept Prevailing Bids only when (i) the Bankruptcy Court has approved the Prevailing Bids and Prevailing Bidders, (ii) the Confirmation Order approving such Prevailing Bids and Prevailing Bidders has been docketed, and (iii) definitive documentation, including but not limited to the Stalking Horse Agreements, has been executed and delivered by the Debtors.

A bidder at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes

relating to the Stalking Horse Agreements, the Auction, the Confirmation Hearing or the construction and enforcement of any bid submitted by a Qualified Bidder. To the extent the Stalking Horse Bidders are not the Prevailing Bidders, the Stalking Horse Bidders shall have standing to contest the highest and best Qualified Bid chosen by the Debtors.

### Failure to Consummate the Prevailing Bid

If for any reason the Prevailing Bidders fail to timely consummate the transactions contemplated by the Prevailing Bids and the Confirmation Order, the Debtors may declare the Back-Up Bidder as having submitted the highest or otherwise best bid and seek to consummate the Back-Up Bid upon further approval by the Bankruptcy Court.

### Procedures with Respect to Deposits

Any deposit shall be returned no later than ten (10) business days after the Bankruptcy Court approves the Prevailing Bid and enters the Confirmation Order, except for deposits submitted by (i) the Prevailing Bidder, and (ii) any Qualified Bidder that has forfeited its deposit as set forth below.

A Qualified Bidder will forfeit (i) its deposit if the Qualified Bidder withdraws or modifies (in a manner determined by the Debtors to be less favorable) its highest bid before the Bankruptcy Court approves the Prevailing Bid or (ii) its deposit if a Qualified Bidder is a Prevailing Bidder and (a) modifies or withdraws its bid without the Debtors' consent or (b) materially breaches the terms and conditions of its bid. Deposits shall be construed as liquidated damages and constitute the Debtors' non-exclusive remedy and recourse against the Qualified Bidder.

### Bid Protections

To provide an incentive and to compensate the Stalking Horse Bidders for performing the substantial due diligence and incurring the related expenses necessary to enter into the Stalking Horse Agreements with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to provide certain bid protections (the "Bid Protections") to the Stalking Horse Bidders, in accordance with the conditions outlined herein and in the Stalking Horse Agreements, including (i) a break-up fee in an amount of $1.9 million (the "Break-Up Fee") as set forth in the Stalking Horse Agreements, (ii) reimbursement of reasonably documented actual out-of-pocket expenses in an amount not to exceed $1,000,000 (such maximum amount, the "Expense Reimbursement") as set forth in the Stalking Horse Agreements, which Break-Up Fee and Expense Reimbursement if approved by the Bankruptcy Court, shall be paid in accordance with the Stalking Horse Agreements.

The Break-Up Fee and the Expense Reimbursement were a material inducement for, and a condition of, the Stalking Horse Bidders' entry into the Stalking Horse Agreements. The Break-Up Fee and the Expense Reimbursement shall be payable as set forth herein and in the Bidding Procedures Order.

### Credit Bidding and/or Foreclosure on Systems

Highland Capital Management, L.P. and any of its affiliates (collectively, "Highland") shall not be permitted to credit bid at the Auction pursuant to section 363(k) of the Bankruptcy Code or otherwise. In the event Highland Credit Strategies Fund, Highland Floating Rate Advantage Fund and Highland Floating Rate Fund (collectively, the "Highland Retail Funds"), in their capacity as the DIP Lenders, foreclose on any System pursuant to their rights under the DIP Credit Agreement and the order approving the DIP Credit Agreement (the "Final DIP Order") at a time when the Stalking Horse Agreement providing for the purchase of such System has not been terminated in accordance with Article X of such Stalking Horse Agreement (such a foreclosure, a "Conforming DIP Foreclosure"), the Stalking Horse Bidder under the applicable Stalking Horse Agreement shall be entitled to an allowed administrative claim equal to the Expense Reimbursement under such Stalking Horse Agreement and the DIP Lenders agree to subordinate any claims arising under the DIP Credit Agreement (the "DIP Claims") to such Stalking Horse Bidders' entitlement to receive the Expense Reimbursement provided under such Stalking Horse Agreement and, to the extent necessary to pay all or a portion of such Expense Reimbursement, shall advance funds under the DIP Credit Agreement to pay such amounts, except that notwithstanding the foregoing, no Stalking Horse Bidder shall be entitled to Expense Reimbursement in connection with a Conforming DIP Foreclosure if such Stalking Horse Bidder (or an entity in which it is an investor) is an acquiror of the System subject to the applicable Stalking Horse Agreement in such Conforming DIP Foreclosure. The Debtors and Highland shall enter into an amendement to the DIP Credit Agreement (the "DIP Amendment") reflecting the terms set forth herein and including other necessary amendments to the DIP Credit Agreement and will seek Bankruptcy Court approval of the DIP Amendment by separate motion.

### Reservation of Rights

The Debtors reserve the right to: (i) determine which bidders are Qualified Bidders; (ii) determine which bid constitutes the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iii) reject any bid that is (a) inadequate or insufficient, (b) not submitted in conformity with the requirements of the Bidding Procedures Order or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates, (iv) impose additional terms and conditions with respect to any or all Qualified Bidders that are not materially inconsistent with these Bidding Procedures and any order of the Bankruptcy Court, (v) extend the deadlines set forth herein with the consent of the DIP Lenders, Required First Lien Lenders and Stalking Horse Bidders, (vi) modify the Auction and Bidding Procedures to ensure greater recovery to the Debtors' estates in a manner not materially inconsistent with the Bidding Procedures Order and with the consent of the DIP Lenders, Required First Lien Lenders and Stalking Horse Bidders, and (vii) adjourn or cancel with the consent of the DIP Lenders, Required First Lien Lenders and Stalking Horse Bidders the Auction and/or Confirmation Hearing in open court without further notice.