**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **IN RE:** | ) | **Chapter 11** |
| | ) | |
| **BROADSTRIPE, LLC, ET AL.,** | ) | **Case No. 09-10006 (CSS)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |
| | ) | **Hearing Date: November 15, 2011 at 2:00 p.m. (ET)** |
| | ) | **Response Deadline: November 8, 2011 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ORDER (A) AUTHORIZING THE SALE OF CERTAIN ASSETS; (B) APPROVING THE ASSET PURCHASE AGREEMENT; (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF**

Broadstripe, LLC ("Broadstripe" or "Seller") and certain of its direct and indirect affiliates, the debtors and debtors in possession in the above-captioned cases (the "Debtors"), by and through their undersigned proposed counsel, respectfully file this motion (the "Motion") for entry of an order (the "Order) in substantially the form attached as Exhibit A hereto (a) authorizing the sale of certain cable systems free and clear of liens, claims encumbrances and interests; (b) approving that certain Asset Purchase Agreement (the "Agreement")[1] by and between Broadstripe and Martell Cable Services, Inc. ("Martell" or "Buyer"); (c) approving the assumption and assignment of certain executory contracts and unexpired leases (the "Designated Contracts") pursuant to the Agreement; and (d) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

---

[1] A copy of the Agreement is attached hereto as Exhibit B.

## I.
## JURISDICTION AND VENUE

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157. These matters concern the administration of these bankruptcy estates; accordingly, the matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.
## BACKGROUND

### A.    The Chapter 11 Case

On January 2, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108.[2] No trustee or examiner has been appointed in the Debtors' cases. On January 15, 2009, the US Trustee appointed an official committee of unsecured creditors (the "Committee").

Now based in Dallas, Texas, the Debtors own and operate cable television and related telecommunications properties in three regions: Maryland (the "Mid-Atlantic System"), Michigan (the "Central System"), and in Washington and Oregon (the "Northwest System"). As of the Petition Date, the Debtors provided approximately 93,000 customers analog and digital cable video services, high-speed data internet access services, and telephone services through their broadband network of coaxial and fiber optic cable.

---

[2] Unless otherwise noted, section references herein are to the Bankruptcy Code.

On August 16, 2011, the Debtors executed Purchase and Sale Agreements (each a "PSA" and, collectively, the "PSAs") for the sale of the Mid-Atlantic System to Anne Arundel Broadband, LLC ("AAB"), the Central System to WideOpenWest Mid-Michigan, LLC ("WOW"), and the Northwest System to WaveDivision I, LLC ("Wave" and together with AAB and WOW, the "Stalking Horse Bidders"), subject to higher and better offers; and subsequently the Court approved certain bid procedures, including certain bid protections for the Stalking Horse Bidders, in connection with that proposed sale [Dkt. No. 2191].

The Debtors' PSA with WOW included the Systems (as defined below) now the subject of this Motion, but WOW has consented to the relief requested herein, *viz.*, the sale of the subject Systems to Martell, notwithstanding anything in WOW's PSA to the contrary.

**B.     Facts Related To The Sale**

By this Motion, the Debtors seek Court authorization to sell two small cable television systems operated by the Debtors in the area of the Village of Vermontville, Michigan, (referred to herein and in the Agreement as the "Systems") to Martell.

The Systems serve customers in a rural area and the Debtors have not had success in running them profitably.  In fact, on average the Debtors lose in the aggregate approximately $4,500.00 per month operating the Systems.

**III.**
**RELIEF REQUESTED**

By this Motion, pursuant to §§ 105, 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014, the Debtors seek an order, substantially similar to the Order attached hereto as Exhibit A, which:

> (a)     authorizes the sale of the Systems to Martell free and clear of all liens, claims and encumbrances whatsoever;

3

(b) approves the Agreement and waives the automatic 14-day stays imposed by Bankruptcy Rules 6004 and 6006;

(c) approves the assumption and assignment of the Designated Contracts; and

(d) grants such other and further relief as is just and proper.

### IV.
### TERMS OF PROPOSED SALE

Pursuant to the Agreement, the Seller propose to sell, assign, and transfer the Systems to Buyer free and clear of all liens, claims, encumbrances and interests, with all such liens, claims, encumbrances and interests to attach to the proceeds of the Sale. The principal terms of the Agreement are as follows:[3]

(a) <u>Purchase Price</u>: The sum of (i) $500.00, *plus* (ii) the assumption of the Assumed Liabilities.

(b) <u>Transferred Assets</u>: The Systems and substantially all property, tangible or intangible, real, personal or mixed, owned or leased by Seller and used in the operation of the Systems, other than the Excluded Assets (as defined in the Agreement), including (i) the fixed or tangible assets actually located at and used in the operations of the Systems; (ii) the Designated Contracts, (iii) the real property owned or leased by Seller and used exclusively in connection with the operation of the Systems; and (iv) the assignable governmental permits and franchises related to the Systems, in each case held by Seller and used exclusively in connection with the Systems.

(c) <u>Excluded Assets</u>. Seller shall retain all of Seller's existing right, title, and interest in and to, and there shall be excluded from the sale to Buyer, the following: (i) cash and investments; (ii) customer accounts receivable relating to the Systems as of the Closing Date (as defined in the Agreement); (iii) any spare parts inventory not actually located at the Systems as of Closing; (iv) fleet, tools and test equipment; (v) any property of Seller that is used in the conduct of Seller's business other than the operation of the Systems; (vi) billing systems, software and firmware, and other intellectual property of Seller; (vii) Seller's programming agreements; (viii) any contract, lease, franchise agreement, pole attachment agreement, or other agreement that is not an Assigned

---

[3] The following description of the terms of the Agreement and all of the exhibits, schedules and attachments thereto is intended solely to give the Court and interested parties an overview of the significant terms of the Agreement. The Court and interested parties should refer to the Agreement, a copy of which is attached hereto as <u>Exhibit B</u>, for the complete and detailed terms thereof.

Contract, including any such contract that relates to the operation of the Systems and at least one other cable television system that is not a System (each, a "Multi-System Contract"); (ix) any non-assignable governmental permit; and (x) any cause of action that arises in favor of Seller or its affiliates under the Bankruptcy Code, that accrue prior to the Closing, including those causes of action arising under §§ 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

(d)     Assumed Liabilities:  All the liabilities and obligations arising from and after Closing relating to the ownership of the Transferred Assets (as defined in the Agreement)   and the operation of the Systems, including all obligations to provide cable television service to persons and entities receiving such service from the Systems as of the Closing Date and all of Seller's obligations arising on and after the Closing Date under the Designated Contracts and the governmental permits and franchises related to the Systems.

(e)     Required Consents and Releases.  As a precondition to Closing, Buyer, with Seller's assistance, shall obtain from each counterparty to each Designated Contract all consents to the assumption (with no liability to Seller) and assignment to the Buyer of each Designated Contract and releases necessary to relieve Seller from any further liability or obligation under each Designated Contract, including any liability or obligation relating to the shutdown or dismantling of any System.   In addition, Buyer, with Seller's assistance,  shall obtain from each counterparty to each Multi-System Contract all consents and releases necessary to relieve Seller from any further liability or obligation under that portion of any Multi-System Contract that relates to the Systems, including any liability or obligation relating to the shutdown or dismantling of any of the Systems. In the event that all Required Consents and Releases (as defined in the Agreement), in form and substance satisfactory to Buyer and Seller, have not been obtained within 30 days after the execution of the Agreement, Seller may (i) terminate this agreement without recourse between the parties, (ii) waive any or all of the Required Consents and Releases, or (iii) extend the period for obtaining the Required Consents and Releases.

## V.
## APPLICABLE AUTHORITY

**A.     The Proposed Sale Is An Exercise Of Sound Business Judgment And Should Be Approved.**

Section 363 authorizes a debtor, after notice and a hearing, to sell assets of the estate other than in the ordinary course of business.  11 U.S.C. § 363(b)(1).

5

Although § 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts have held that approval of a proposed sale of property pursuant to § 363(b) is appropriate if the transaction represents the reasonable business judgment of the debtor. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *see also In re Delaware & Hudson Rv. Co.*, 124 B.R. 169,176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the preconfirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith"); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986).

If a valid business justification exists for the sale, as it does in this case, a debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Therefore, any party objecting to the debtor's proposed asset sale must make a showing of "bad faith, self-interest or gross negligence." *Id.* at 656; *see also Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

6

In determining whether a proposed sale satisfies this standard, courts typically consider the following: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See, e.g., In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (D. Del. 1987). The proposed sale satisfies all these factors.

*First*, the Debtors have proposed the sale of the Systems after thorough consideration of all viable alternatives and have concluded that the sale is supported by a number of sound business reasons. First and foremost, it is uneconomical for the Debtors to continue to operate the Systems, which serve a limited number of subscribers in rural areas. Moreover, the Debtors believe that the sale of the Systems will result in the elimination of potential administrative expenses that could arise if the Debtors were to shut down these systems. The maximization of asset value for the benefit of creditors reflects a sound business purpose that warrants authorization of the proposed sale.

*Second*, the Debtors have given notice of the filing of this Motion to the Stalking Horse Bidders, including WOW, the Debtors' secured lenders, the members of the Official Committee of Unsecured Creditors, the office of the United States Trustee, and all persons who have filed a notice of appearance in these cases. The Debtors submit that such notice constitutes adequate and reasonable notice to interested parties.

*Third*, the value to be received by the Debtors for the Systems by entering into the Agreement, including the Buyer's assumption of all Assumed Liabilities constitutes a fair and reasonable price for the Systems.

*Finally*, as described in more detail below, the Agreement was negotiated in good faith.

7

For the foregoing reasons, the Debtors submit that approval of the Agreement and proposed sale and all related transactions are appropriate under § 363 and should be approved in all respects.

**B.      Sale Of The Assets Will Be Free And Clear Of Encumbrances.**

Section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances in property of an entity other than the estate if—

> (1)  applicable nonbankruptcy law permits a sale of such property free and clear of such interest;
> (2)  such entity consents;
> (3)  such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
> (4)  such interest is in *bona fide* dispute; or
> (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Because § 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that § 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[S]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986).  The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) did not apply.  *See In re Trans World Airlines. Inc.*, No. 01-0056, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("Bankruptcy

8

courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f)."); *see also Volvo White Truck Corp. v. Chambersberg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Banks. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11").

With regard to the transfer of the Systems pursuant to the Agreement, the Debtors believe that at least one of the tests in § 363(f) is satisfied. In particular, the Debtors believe believes that § 363(f)(2) is met because each of the parties holding liens on the Systems, if any, will consent or, absent any objection to this Motion, be deemed to have consented to the sale and transfer of the Systems.

Further, any lienholder will be adequately protected by having its liens, if any, attach to the sale proceeds received by the Debtors for the sale of the Systems to Buyer in the same order of priority, validity, force, and effect that such creditor had prior to such sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto. Accordingly, § 363(f) authorizes the sale and transfer of the Acquired Assets free and clear of any such encumbrances.

**C.    The Agreement Was Negotiated At Arm's Length And In Good Faith.**

The Debtors request that this Court find and conclude that the Debtors and Buyer negotiated and acted at all times in good faith and, as a result, that Buyer is entitled to the protections of a good-faith purchaser under § 363(m) and that the Agreement does not constitute an avoidable transaction pursuant to § 363(n).

Further, the Debtors submit that the consideration for the Agreement and the cost savings the Debtors will realize as a result of consummating the Agreement provide substantial value for

9

their bankruptcy estates and constitute fair and reasonable consideration. *See Mellon Bank, NA. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir.1991) (finding that reasonably equivalent value existed under the Bankruptcy Code), *cert. denied,* 503 U.S. 937 (1992); *see also Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors  In re R.M.I., Inc.)*, 92 F.3d 139 (3d Cir. 1996); *Salisbury v. Texas Commerce Bank-Houston, N.A. (In re WCC Holding Corp.)*, 171 B.R. 972, 984 (Banks. N.D. Tex. 1994) (reasonably equivalent value under Texas law) (citing *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1495 (5th Cir.), *cert. denied.* 510 U.S. 821 (1993) and *Southmark Corp. v. Riddle (In re Southmark Corp.)*, 138 B.R. 820, 829 (N.D. Tex. 1992)); *In re China Resource Prod. Ltd. v.  Favda Intern., Inc.*, 856 F. Supp. 856, 866 (D. Del. 1994) *(*quoting *Ge$^y$er v. Ingersoll Publications Co.*, 621 A.2d 784, 792 (Del. Ch. 1992)).

Based upon the foregoing, the Debtors submit that to preserve and maximize the value of their estates, the sale of the Systems pursuant to the Agreement is an exercise of sound business judgment, is in the best interests of the Debtors and their estates, and should be approved in all respects.

**D.    Debtors May Enter Into The Agreement**

In connection with the sale of a debtor's assets, courts routinely approve entry into asset purchase agreements. *See, e.g., In re Enron Corp.*, No. 01-16034, 2002 WL 32154269, at *4 (Bankr. S.D.N.Y. Apr. 24, 2002).   Such agreements are approved if they are an exercise of the debtor's sound business judgment. *See, e.g., In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332377, at *5 (Bankr. D. Del. May 17, 2002); *In re Arlco, Inc.*, 239 B.R. 261, 265 (Bankr. S.D.N.Y, 1999).   Here, the Agreement was the subject of arm's-length negotiations between the Seller and the Buyer, and Debtors submit that the terms and conditions of the Agreement are the

10

best that could be obtained under the circumstances, and that entry into the Agreement is a sound exercise of the Debtors' business judgment.

**E.    Cause Exists To Eliminate The Stays Imposed By The Bankruptcy Rules**

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease... is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6006(d).

The Debtors request that any order entered authorizing the consummation of a transaction that is deemed a sale of assets and/or an assignment of an unexpired lease be effective immediately by providing that the 14-day stay imposed by Bankruptcy Rules 6004 and/or 6006, as the case may be, is inapplicable. This waiver or elimination of the 14-day stay is necessary so that the proposed Sale may close as expeditiously as possible and within the time frames contemplated by the Seller and the Buyer. Accordingly, the Debtors hereby request that the Court eliminate the 14-day stay periods imposed by Bankruptcy Rules 6004 and 6006.

**F.    Assumption And Assignment of Designated Contracts Is Authorized By Section 365 Of The Bankrupcy Code**

Sections 365(a) and (b) of the Bankruptcy Code authorize a debtor in possession to assume, subject to the court's approval, executory contracts or unexpired leases of the debtor. 11 U.S.C. § 365(a) and (b); *In re Jamesway Corp.*, 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996). Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

11

In turn, section 365(b)(1) of the Bankruptcy Code codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
>
> > (A)    cures or provides adequate assurance that the trustee will promptly cure, such default …;
> >
> > (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C)    provides    adequate    assurance    of    future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

In analyzing whether the assumption or rejection of an executory contract or unexpired lease pursuant to section 365(a) should be approved, courts apply the "business-judgment" test, which requires a determination that the requested assumption or rejection be beneficial to the estate. *See, e.g., In re Group of Institutional Investors, Inc. v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) ("The question [of assumption] is one of business judgment."); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993) (holding that, when deciding whether to grant a motion to assume, a court must put itself in the trustee's position and determine whether such assumption would be a good decision or a bad one).

Courts generally will not second-guess a debtor's business judgment concerning the assumption of an executory contract. *See In re Paolo Gucci*, 193 B.R. 411, 414 (S.D.N.Y. 1996); *Sharon Steel Corp. v. National Gas Fuel Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d

12

36, 40 (3d Cir. 1989); *In re III Enter., Inc.*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject an executory contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment—a standard which we have concluded many times is not difficult to meet.").

Here, the Debtors' assumption and assignment of the Designated Contracts to the Buyer meets the business-judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code. As discussed above, the transactions contemplated by the Agreement will provide meaningful benefit to the Debtors' estates. Because the Debtors cannot obtain the benefits of the Agreement without the assumption of the Designated Contracts, the assumption of these Designated Contracts is undoubtedly a sound exercise of the Debtors' business judgment.

Further, a debtor-in-possession may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with section 365(a), and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement. *See* 11 U.S.C. § 365(f)(2). Significantly, among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g,, In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the prospective assignee of a lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but it should be given "practical, pragmatic construction." *EBG Midtown South Corp. v. McLaren/Hart Environmental*

*Eng'g. Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), *aff'd*, 993 F.2d 300 (2d Cir. 1993).

Here, there are no defaults to be cured in connection with assumption of the Designated Contracts, and the Buyer has sufficient assets and the requisite experience in operating cable systems to continue performance thereunder. Accordingly, the Debtors submit that the assumption and assignment of the Designated Contracts as set forth in the Agreement and described herein should be approved.

To assist in the assumption, assignment, and sale of the Designated Contracts, the Debtors request that the Bankruptcy Court enter an order providing that anti-assignment provisions, if any, in the Designated Contracts and the assignable governmental permits and franchises related to the Systems shall not restrict, limit, or prohibit the assumption, assignment, and sale of the Designated Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

Section 365(f)(1) of the Bankruptcy Code permits a debtor to assign unexpired leases and contracts free from such anti-assignment restrictions, providing, in pertinent part, that:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . . . .

11 U.S.C. § 365(f)(1).

By operation of law, section 365(f)(1) invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease. *See, e.g., Coleman Oil Co., Inc. v. The Circle K Corp. (In re The Circle K Corp.)*, 127 F. 3d 904, 910-11 (9th Cir. 1997) ("[N]o principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend

14

their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365."). Section 365(f)(3) goes beyond the scope of section 365(f)(1) by prohibiting enforcement of any clause creating a right to modify or terminate the contract or lease upon a proposed assumption or assignment thereof. *See, e.g., In re Jamesway Corp.*, 201 B.R. 73 (Bankr. S.D.N.Y. 1996) (finding that section 365(f)(3) prohibits enforcement of any lease clause creating right to terminate lease because it is being assumed or assigned, thereby indirectly barring assignment by debtor; all lease provisions, not merely those entitled anti-assignment clauses, are subject to court's scrutiny regarding anti-assignment effect).

Other courts have recognized that provisions that have the effect of restricting assignments also cannot be enforced. *See In re Rickel Home Centers, Inc.*, 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 365(f), courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions."). Similarly, in *In re Mr. Grocer, Inc.*, the court noted that:

> [The] case law interpreting § 365(f)(1) of the Bankruptcy Code establishes that the court does retain some discretion in determining that lease provisions, which are not themselves ipso facto anti-assignment clauses, may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets.

77 B.R. 349, 354 (Bankr. D.N.H. 1987). Thus, the Debtors request that any anti-assignment provisions be deemed not to restrict, limit or prohibit the assumption, assignment and sale of the Designated Contracts and the assignable governmental permits and franchises related to the

15

Systems and be deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested herein and awarding such other and further relief that the Court deems just and proper.

Dated: October 26, 2011
Wilmington, Delaware

ASHBY & GEDDES, P.A.

_/s/ Amanda M. Winfree_

Don A. Beskrone (#4380)
Amanda M. Winfree (#4615)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

- and -

GARDERE WYNNE SEWELL, LLP
John P. Melko (TX 13919600)
Clinton R. Snow (TX 24060629)
1000 Louisiana, Suite 3400
Houston, TX  77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555

COUNSEL FOR THE DEBTORS

16